(33 Misc. Rep. 587.)

### TAUSEND et al. v. HANDLEAR.

(Supreme Court, Appellate Term. January 10, 1901.)

1. ATTACHMENT—MARSHALS — POWER TO SERVE WARRANTS OUTSIDE OF COUNTY.

An action was instituted and an attachment issued against defendant in New York county, and a warrant was executed against his goods in Kings county. The warrant was directed, "To Any Marshal of the City of New York to Whom the Annexed Summons is Delivered," requiring him "to attach * * * so much of the goods and chattels of the said J. within your city, and safely keep the same, as will be sufficient," etc. The warrant was not shown to have been executed by a marshal of Kings county. Held, that such warrant did not authorize a marshal to levy on goods outside of his own county, since, under Greater New York Charter (Laws 1897, c. 378, §§ 1426, 1428), the powers and duties of marshals are made strictly local, and Consol. Act, §§ 1318, 1320, provide that warrants of attachment must require the marshal to whom the summons is delivered to attach defendant's goods within his county, and that the marshal shall execute the warrant by levy on defendant's goods within his county.

2. SAME.

Greater New York Charter, § 1368, giving the municipal court power to send its process for service or execution into any district or part of the city of New York, and to enforce obedience thereto, does not authorize a marshal living in one county of the city of New York to execute such process outside the limits of such county, since the enlargement of the sphere in which the process of the municipal court may run does not thereby extend the sphere within which marshals are authorized to execute their functions.

Appeal from municipal court, borough of Manhattan.

Attachment by Felix Tausend and another against James Handlear. From a judgment for plaintiffs, defendant appeals. Reversed.

Argued before BEEKMAN, P. J., and GIEGERICH and O'GORMAN, JJ.

Arthur Furber, for appellant.

GIEGERICH, J.[1] The defendant was not personally served with the summons, and he appeared for the special purpose of moving to vacate the attachment and to dismiss the action. The motion was

[1] Opinion rendered by the associate justices after the death of Presiding Justice BEEKMAN.

denied, and judgment was rendered against the defendant by default. The defendant has appealed to this court from the judgment so rendered against him, with notice that on such appeal there would be brought up for review the order denying the motion to vacate and set aside the attachment. It is to be regretted that so important a question as the one presented on this appeal has to be decided without the assistance of either an oral argument or a brief on behalf of the respondent.

Several grounds are urged on this appeal against the validity of the judgment, but only the first need be considered, because, in our opinion, that one is well taken. The objection is that the warrant is void, in that it contains directions unauthorized by law. The warrant is directed, "To Any Marshal of the City of New York to Whom the Annexed Summons is Delivered," and requires him "to attach * * * so much of the goods and chattels of the said James Handlear within your city, and safely keep the same, as will be sufficient," etc. It seems quite plain that this direction is in excess of the power with which the municipal court of the city of New York is clothed by the statute. The Greater New York charter (Laws 1897, c. 378) provides in section 1426 "that * * * marshals shall be assigned by the mayor to such duty within the boroughs wherein they reside respectively as is or may be provided by law." Whatever doubt might be entertained as to these officers being strictly local—the powers and duties confined solely to the counties for which they are appointed—will be removed by reading section 1428 of such charter, which provides:

"In so far as consistent with this act, the provisions of law relating to the bonds, duties, powers and fees of marshals, and all other matters concerning marshals in the city of New York, in force on the 31st day of December, eighteen hundred and ninety seven, shall apply to the marshals appointed or continued in the office pursuant to this title: provided, however, that the bonds of said marshals so appointed pursuant to this title shall be filed in the office of the city clerk, and that in the prosecution of the official bonds of all marshals, application for leave to prosecute the same shall be made to a justice of the supreme court at chambers in the judicial department wherein the borough for which such marshal shall have been appointed is situated, and such leave shall not be granted unless it appears that a transcript of the judgment against such marshal had been filed in the office of the clerk of the county within which such borough is situated, and such justice may order such bond to be prosecuted in the municipal court of the city of New York, or in the city court of the city of New York, if such borough be within the county of New York, or in the county court of the county wherein such borough lies, if in any other county."

Referring now to the consolidation act, to ascertain what provisions of law were in force on the date mentioned in the section just quoted, the following are found:

"Sec. 1318. It [the warrant of attachment] must require the marshal, to whom the summons is delivered, to attach * * * so much of the defendant's goods and chattels within his county as will satisfy the plaintiff's demand," etc.

"Sec. 1320. The marshal to whom the warrant of attachment is delivered must execute it * * * by levying upon and taking in to his custody so much of the goods and chattels of the defendant which he finds within his county," etc.

From these provisions, therefore, it is obvious that the county is recognized as the sphere within which the marshal's functions are to be exercised. It is true that section 1368 of the Greater New York charter provides:

"The municipal court in any district shall have power to send its process and other mandates in an action or special proceeding of which it has jurisdiction into any district or part of the city of New York for service or execution, and to enforce obedience thereto, and such process and mandates may be served in any district or part of the city of New York, as constituted by this act."

But this does not mean that the marshal living in one county of the city of New York can execute such process outside the limits of the county in which he resides. The Code of Civil Procedure (section 347), in defining the jurisdiction of the county courts, makes a similar provision, upon the model of which it is evident that section 1368, just quoted, was drafted, and which provides as follows:

"A county court has power, in an action or special proceeding, of which it has jurisdiction, to send its process and other mandates into any county of the state, for service or execution, and to enforce obedience thereto, with like power and authority as the supreme court."

The process of the county court can be sent into any county of the state, just as the process of the municipal court of the city of New York can be sent into any part of that city; but, just as the process of the county court has to be executed by the sheriff of the county into which it is sent, so the process of the municipal court of the city of New York must be executed by a marshal residing in the county to which the process is sent. It is evident, therefore, that the new charter, in enlarging the sphere within which the process of the municipal court would run, did not thereby enlarge the sphere within which the marshals are authorized to execute their functions.

The case at bar is distinguishable from that of People v. Dunn (Sup.) 54 N. Y. Supp. 194, which was a proceeding by habeas corpus to inquire into the detention of the petitioner by the sheriff of the county of New York; he having been arrested in the borough of Brooklyn by a marshal of the borough of Manhattan on an execution against his body issued upon a judgment rendered by the municipal court of the city of New York, sitting in the last above mentioned borough. In sustaining the regularity of the detention, Mr. Justice Freedman based his decision exclusively upon the above-cited section 1368 of the Greater New York charter. The above-quoted statutory provisions respecting the powers and duties of marshal do not appear to have been brought to his attention. Moreover, the provisions of the consolidation act (section 1399) pertaining to the requirements of an execution against the person do not, as in the case of a warrant of attachment, limit the direction to the officer to arrest the defendant within his county. The remedy of attachment is severe and in derogation of the common law, and must therefore be strictly pursued. Penoyar v. Kelsey, 150 N. Y. 77, 44 N. E. 788, 34 L. R. A. 248. That it was in this case strictly pursued is not apparent. The action was instituted in the borough of Manhattan (New York county), and a warrant was executed in the borough of Brooklyn (Kings county).

The residence of the marshal executing the warrant is not stated any-where in the record, but he seems in fact to be a resident of the borough of Manhattan, and assigned to duty in that borough. This is a fact of which judicial notice might, perhaps, have been taken in the court below, on the principle that cognizance will be taken of attachés of a court (Jones, Ev. § 109), and also in the appellate court (Id. § 117). But whether judicial notice could be taken of this fact or not need not be determined, since we think that, under the circumstances, it was at least incumbent on the plaintiff to show that, notwithstanding the unauthorized direction in the warrant, it was in fact executed by a marshal having the authority to act where the levy was made.

As this was not shown, the judgment should be reversed, and a new trial ordered, with costs to abide the event.